SANDY, MICHAEL, ELIZABETH & DANIEL CARMENA
v.
EAST BATON ROUGE SHERIFF'S DEPARTMENT, DEPUTY LEN STARNES, DEPUTY GREEN, LIEUTENANT CHRIS BROWNING & ANTHONY, TREVOR, & AUDREY HARRISON.
No. 2007 CA 0300.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008
JOSEPH K. SCOTT, III, JEFF NICHOLSON, Baton Rouge, La, Counsel for Plaintiffs/Appellants Sandy, Michael, Elizabeth & Daniel Carmena.
CYRUS J. GRECO, HARRY J. PHILLIPS, JR., Baton Rouge, La, Counsel for Defendant/Appellee East Baton Rouge Sheriff's Department.
TERRY F. HESSICK, Baton Rouge, La, Counsel for Defendant/Appellee State of Louisiana.
Before: CARTER, WHIPPLE, GUIDRY, McDONALD, and HUGHES, JJ.
HUGHES, J.
This is an appeal from a judgment of the 19th Judicial District Court that sustained an exception of prescription and dismissed appellants' claims. For the following reasons, we reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
This case originally arose out of a dispute over the ownership of a dog. Based upon allegations in the original pleadings, Sandy Carmena and her children owned a miniature Daschund named Fritz, who went missing from their home sometime in September of 2004. Ms. Carmena alleges that on October 23, 2004 she found a dog she thought to be Fritz and took him home. Defendant, Harrison and his children also allege to own a miniature Daschund dog. Mr. Harrison alleges that Ms. Carmena claimed his dog was Fritz and stole his dog out of his yard. Mr. Harrison contacted the local police. Later that evening, a deputy went to the Carmenas' home to investigate Mr. Harrison's complaint. The deputy left the dog with Ms. Carmena that evening, but required that she agree to present the dog at the office of the Harrisons' veterinarian in an attempt to determine whether the dog belonged to her or Mr. Harrison.
On October 24, 2004, as agreed, the parties met at the office of the Harrisons' veterinarian. As a result of the veterinarian's examination, the deputy determined that the dog belonged to Mr. Harrison and gave the dog to him.[1] On November 28, 2005, Ms. Carmena, individually and on behalf of her three children, Michael, Elizabeth, and Daniel, filed suit against the East Baton Rouge Parish Sheriff's Department, Deputy Len Starnes, Deputy Roosevelt D. Green, III., and Lieutenant Chris Browning; and Anthony, Trevor, and Audrey Harrison, seeking the return of the dog, damages for the conversion of Fritz, deprivation of property, and negligent and/or intentional infliction of emotional distress. The defendants filed exceptions, including lack of procedural capacity, no legal capacity to be sued, no cause of action, and prescription. A hearing on the exceptions was originally held on June 19, 2006; however, on motion of defendants and Charles C. Foti, Jr., Attorney General of the State of Louisiana, a rehearing was held on August 24, 2006. (R., pgs. 33, 41) Plaintiffs argued that their suit was not barred by prescription because Governor Blanco's Executive Orders Nos. KBB-2005-32, KBB-2005-48, and KBB-2005-67[2] suspended the applicable prescriptive period through January 3, 2006. Governor Blanco's Orders were later ratified by Act 6 of the 2005 1st Extraordinary Session of the legislature.[3] Plaintiffs alleged that as their suit was filed in November of 2005, their claims had not prescribed. Ultimately, two judgments issued sustaining defendants' exception of prescription and dismissing the Carmenas' claims.[4]
In both the trial court's written and oral reasons for judgment, it is apparent that the court believed Governor Blanco's Executive Orders and the subsequent legislation to be unconstitutional. Based on that apparent belief, the trial judge concluded that plaintiffs' action had indeed prescribed and he therefore sustained defendants' exception of prescription. Nevertheless, the judgment issued by the trial court does not contain any language declaring either the Executive Orders or the Act unconstitutional. The Attorney General, on behalf of the State, originally appealed to the Louisiana Supreme Court, but because the judgment merely sustains the exception of prescription and does not declare any law unconstitutional, the supreme court declined to exercise its original appellate jurisdiction and remanded the case to this court.

LAW AND ARGUMENT
Appellants make only one assignment of error: the granting of the exception of prescription. Normally, the exceptor bears the burden of proof regarding his exception; however, if the exception of prescription is raised and prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show suspension, interruption, or renunciation. SS v. State ex rel. Dept. of Social Services, XXXX-XXXX (La. 12/4/02), 831 So.2d 926, 931 (citing Lima v. Schmidt, 595 So.2d 624, 628 (La. 1992)).
The Carmenas allege that Fritz was wrongfully taken from them on October 24, 2004. The suit was not filed until November 28, 2005, more than one year from the time the cause of action arose. As such, on the face of the pleadings, the action appears to have prescribed. Therefore, the burden shifted to the Carmenas to show suspension, interruption or renunciation of the prescriptive period. To show suspension, the Carmenas relied upon Governor Blanco's Executive Orders and Act 6 of the 2005 legislative session.
It is well settled in the law that legislative acts are presumed to be constitutional. State v. All Property and Casualty Insurance Carriers Authorized and Licensed to Do Business in State, 2006-2030 (La. 8/25/06), 937 So.2d 313, 319. Act 6 of the 2005 1st Extraordinary Session of the legislature, which states that "[t]he action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed." The judgment issued by the trial court does not declare Act 6 to be unconstitutional. Although admittedly the oral and written reasons for judgment leave no room for doubt that the trial court's judgment was based upon his determination that Act 6 was, in fact, unconstitutional, we cannot write into a judgment that which is not there. The judgment before us merely sustains the exception of prescription.
Furthermore, we find guidance in the case of Harris v. Stogner, XXXX-XXXX, (La. 11/9/07), 967 So.2d 1151 (per curium). In that case, plaintiff's action was dismissed on grounds of abandonment. The case, filed by plaintiffs on October 14, 2002, was answered by defendants on December 20, 2002. No further action took place until June 13, 2006. Plaintiff defended against defendants' motion for dismissal, arguing that he had failed to file pleadings in the case for more than three years due to circumstances beyond his control as a result of Hurricanes Katrina and Rita. The Louisiana Supreme Court held that the exact legislation relied upon by the Carmenas extended the abandonment period for Harris until at least January 4, 2006.[5] Harris v. Stogner, 967 So.2d at 1152. Ultimately, however, the supreme court held that the lawsuit was abandoned because plaintiff failed to take any action in the suit until two weeks beyond any extension authorized by statute in the aftermath of Hurricanes Katrina or Rita. Harris v. Stogner, 967 So.2d at 1152.
Considering that legislation is presumed to be constitutional and give the supreme court's holding in Harris, we find that Act 6 suspended legal deadlines, including liberative and prescriptive periods, until January 4, 2006. On the record before us, we are constrained to conclude that the Carmenas carried their burden of proof regarding suspension of prescription in this case, absent a judicial declaration, by appropriate judgment or decree, that Act 6 is unconstitutional. Thus, there is no support for the judgment rendered by the court, and the exception of prescription should have been overruled.

CONCLUSION
Plaintiffs action had not prescribed on November 28, 2005, the time of the filing of the suit, due to Act 6 of the 2005 1st Extraordinary Session, which ratified Governor Blanco's Executive Orders. The judgment of the trial court is reversed and this matter is remanded for further proceedings. All costs of this appeal are to be borne by appellees.
REVERSED AND REMANDED.
McDONALD, J., AGREEING IN PART AND DISSENTING IN PART:
I agree in part and dissent in part. As noted by the majority the trial court's "written reasons for judgment leave no room for doubt that the trial court's judgment was based upon his determination that Act 6 was, in fact, unconstitutional..." However, the judgment does not declare it unconstitutional and only grants the exception of prescription. Rather than reverse the trial court, I would remand the matter for the sole purpose of allowing the trial court an opportunity to perfect a judgment that not only granted the exception of prescription, but also declared Act 6 unconstitutional. Having done that, the matter could then proceed straight to the supreme court for review.
NOTES
[1] As this matter was dismissed pursuant to an exception, the underlying facts can be gleaned only from the allegations of the parties. It appears that the dog was also taken to the Carmenas' veterinarian for examination and was determined to be three pounds lighter than Fritz was at his last appointment. Further, there is an indication that the dog was given a DNA test in order to conclusively determine if the dog belonged to Mr. Harrison. The record does not show whether Ms. Carmena was given the results of the DNA test prior to the filing of this suit. Moreover, we are unable to determine whether, in the interim, the information was exchanged and there is now a conclusive determination regarding ownership of the dog.
[2] Executive Order KBB 2005-32, signed on September 6, 2005, provided in pertinent part, that " [a]ll deadlines in legal proceedings, including liberative prescriptive and preemptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following: (A) Louisiana Civil Code; (B) Louisiana Code of Civil Procedure; (C) La. R.S. Title 9, Civil Code Ancillaries; (D) La. R.S. Title 13, Courts and Judicial Procedure; (E) La. R.S. Title 23, Chapter 10, Worker's Compensation; (F) La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and (G) La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice." This order applied retroactively from Monday, August 29, 2005 [the date that Hurricane Katrina made landfall], through Sunday, September 25, 2005, "unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time."

Executive Order KBB 2005-48, signed on September 23, 2005, extended Executive Order KBB 2005-32 for an additional thirty days and specified that the suspension of laws authorized therein would apply statewide "except to the extent that the suspension of deadlines in legal proceedings may hereafter be shortened or lifted, in whole or in part, by an order issued by the Louisiana Supreme Court acting in accordance with the power vested pursuant to Article V of the Constitution."
Executive Order KBB 2005-67, signed on October 19, 2005 [after Hurricane Rita made landfall], suspended liberative prescription and preemptive periods until at least Friday, November 25, 2005. In addition, this order specifically provided for the suspension of deadlines in legal proceedings in the parishes affected by Hurricane Rita and referenced particular types of legal proceedings that were otherwise subject to rules promulgated by the Louisiana Supreme Court.
[3] In the special session, the legislature enacted several statutes, including:

La. R.S. 9:5821. Purpose; ratification
A. The legislature finds that Hurricanes Katrina and Rita created a statewide emergency disrupting and forcing the closure of certain courts and publice offices and further resulting in the displacement of courts, offices, clients, and counsel. This Chapter is enacted for the benefit and protection of the state as a whole and its citizens, and to prevent injustice, inequity, and undue hardship to persons who were prevented by these hurricanes from timely access to courts and offices in the exercise of their legal rights, including the filing of documents and pleadings as authorized or required by law. Therefore, this Chapter shall be liberally construed to effect its purposes.
B. The action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed subject to the provisions of R.S. 9:5822 through 5825.
La. R.S. 9:5822. Suspension and extension of prescription and preemption; exceptions
A. All prescriptions, including liberative, acquisitive, and the prescription of nonuse, and all preemptive periods shall be subject to a limited suspension and/or extension during the time period of August 26, 2005 through January 3, 2006; however, the suspension and/or extension of these periods shall be limited and shall apply only if these periods would have otherwise lapsed during the time period of August 26, 2005 through January 3, 2006. This limited suspension and/or extension shall terminate on January 3, 2006, and any right, claim, or action which would have expired during the time period of August 26, 2005, through January 3, 2006, shall lapse on Janauary 4, 2006.
B. The provisions of Subsection A shall not apply to any matter concerning the prescription of nonuse applicable to mineral servitudes, mineral royalty interests, and executive rights and shall be governed by the Louisiana Mineral Code and are not subject to the suspension provisions in this Section.
[4] One judgment is dated July 7, 2006, issued after the original hearing on the exception and one judgment is dated August 24, 2006, issued after the rehearing on the exception. Both judgments sustain the exception of prescription and neither judgment declares any law to be unconstitutional. Although the Carmenas and the Attorney General submitted motions for appeal of only the August 24, 2006 judgment, the notice of appeal issued by the 19th Judicial District Court states that "an order of appeal was entered granting a devolutive appeal from the Judgments of July 7, 2006, and August 24, 2006."
[5] The supreme court notes in its decision that La. R.S. 9:5824 provides that a party, by contradictory motion, may seek a further extension until June 1, 2006. Although it does not appear in the record that any such motion was filed by Harris, even assuming for the sake of argument that he had, that extension would have expired on June 1, 2006 and he still did not take action in the case for another two weeks.